J-E03009-21

2022 PA Super 66

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON ALLEN LIPPINCOTT | : | |
| | : | |
| Appellant | : | No. 633 EDA 2020 |

Appeal from the Order Entered February 11, 2020
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0003839-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON ALLEN LIPPINCOTT | : | |
| | : | |
| Appellant | : | No. 634 EDA 2020 |

Appeal from the Order Entered February 11, 2020
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0003840-2012

BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., OLSON, J., STABILE,
  J., KUNSELMAN, J., NICHOLS, J., KING, J., and McCAFFERY, J.

OPINION BY PANELLA, P.J.:                 **FILED APRIL 12, 2022**

This case is again before the Court on the appeal of Jason Allen

Lippincott from the Order dated February 11, 2020, which designated him as

a sexually violent predator ("SVP") pursuant to Megan's Law II, 42 Pa.C.S.A.

§§ 9791- 9799.7 (expired).[1] We find the trial court was empowered to conduct an SVP hearing upon remand pursuant to this Court's prior *en banc* decision. However, the trial judge, newly assigned to the case because of the retirement of the prior trial judge, faced a difficult legal issue as the status of the Pennsylvania Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10-9799.41, was in flux at the time of the SVP hearing. The legislature and appellate courts have subsequently clarified the status of SORNA. Based on this clarification, we are constrained to find the trial court should have applied Subchapter I of the amended SORNA, rather than Megan's Law II. The applicable sexual offender registration law at the time of the SVP hearing in December 2019 was specified in Subchapter I of Act 29. **See** 42 Pa.C.S.A. §§ 9799.51-9799.75. Although we acknowledge that the assessment provisions of Subchapter I of Act 29 are practically identical to those in Megan's Law II, out of an exercise of extreme caution, we remand for a new SVP hearing.

We liberally adopt from our earlier decisions the background of this case, while at the same time acknowledging its tortured procedural history. On January 24, 2013, at Docket Number CP-48-CR-0003839-2012 (3839-2012), Lippincott pled guilty to one count each of aggravated indecent assault and

---

[1] As explained more fully in the body of this opinion, this case has generated multiple reviews by this Court.

corruption of minors.[2] These charges arose from Lippincott's sexual assault of a 14-year-old female in May 2012. Also on January 24, 2013, at Docket Number CP-48-CR-0003840-2012 (3840-2012), Lippincott pled guilty to one count each of statutory sexual assault, corruption of minors, and indecent assault.[3] These charges resulted from Lippincott's sexual assault of a different 14-year-old female, which occurred on five occasions between October 2011 and April 2012.

On August 21, 2013, the trial court sentenced Lippincott at both dockets to an aggregate term of 30 to 60 months of incarceration, followed by 72 months of probation. The same day, the trial court heard testimony from Dr. Veronique Valliere of the Sexual Offenders Assessment Board ("SOAB"). Dr. Valliere opined that Lippincott met the definition of an SVP. On November 25, 2013, Lippincott filed a motion in which he asked the court to appoint an expert witness to conduct an independent SVP evaluation. On December 27, 2013, the trial court held a hearing on Lippincott's motion; following the hearing, the court denied the motion. On June 17, 2014, the trial court entered an Order with a Statement of Reasons classifying Lippincott as an SVP.

Lippincott filed an uncounseled petition on July 8, 2014, seeking relief pursuant to the Post Conviction Relief ("PCRA") Act, 42 Pa.C.S.A. §§ 9541-9546. On July 10, 2014, the trial court issued an Order scheduling an issue-

---

[2] 18 Pa.C.S.A. §§ 3125(a)(8) and 6301(a)(1)(i) respectively.
[3] 18 Pa.C.S.A. §§ 3122.1(b), 6301(a)(1)(i) & 3126(a)(1).

framing conference for August 15, 2014. The trial court noted that a member of the Public Defender's Office had been appointed to represent Lippincott. On the same day, for reasons not appearing of record, Lippincott filed an uncounseled Notice of Appeal, specifically stating that he was challenging his designation as an SVP.

An unusual Order was then entered by the original trial judge:

> AND NOW, this 22nd day of July, 2014, the Court hereby **DECLINES TO RECOGNIZE** the notice of appeal filed *pro se* on July 10, 2014, by the Defendant, Jason Lippincott; that day, the Court issued an order granting the Defendant's request for PCRA counsel . . . in his *pro se* PCRA Petition.[1] This Order is without prejudice to the Defendant's ability to re-file his appeal *nunc pro tunc* if he elects to withdraw his PCRA petition.
>
> Footnote 1: ***See Commonwealth v. Williams***, 410 A.2d 880, 883 (Pa. Super. 1979) (a defendant has no constitutional right to proceed as co-counsel in his own defense).

Order, 7/22/2014 (emphasis in original).

Lippincott's privately retained counsel was granted permission to withdraw his appearance in the Superior Court on November 18, 2014. Then, in the trial court, on December 12, 2014, Lippincott filed an uncounseled, amended PCRA petition, apparently ignoring the appeal he had filed in this Court.

The trial court docket does not indicate any further activity until January 27, 2016, when the trial court again scheduled an issue-framing conference for the PCRA petition. In the same Order, the trial court appointed Lippincott's current counsel to represent Lippincott in the PCRA matter.

On May 13, 2016, the trial court filed an Order granting Lippincott's PCRA petition and re-sentenced Lippincott to the terms of incarceration specified in the Order. On July 26, 2016, the trial court filed an Order which "clarified" the sentence imposed on May 13, 2016. On August 24, 2016, the court again filed an Order which "clarified" the sentence imposed on May 13, 2016. Lippincott responded to the May 13, 2016 order by filing numerous uncounseled documents in the court, none of them pertinent to the appeal currently before this Court.

Current counsel for Lippincott then filed his appearance in the Superior Court on May 23, 2016, and later filed a motion for leave to file an amended docketing statement and requested a briefing schedule. In this motion, counsel averred that "[v]arious ongoing proceedings in the trial court below have delayed the resolution of his appeal." The Superior Court granted counsel's request to file an amended docketing statement and established a briefing schedule.

On January 17, 2017, more than two years after the Notice of Appeal had been filed, the trial court entered an order directing Lippincott to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Lippincott complied and the trial court filed a Pa.R.A.P. 1925(a) opinion.

On appeal to this Court, the parties initially filed briefs on the sole issue raised in Lippincott's Rule 1925(b) statement, *i.e.,* whether the trial court

erred in denying Lippincott's request for a court-appointed expert to conduct an independent SVP evaluation. However, on July 19, 2017, our Supreme Court decided **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (plurality). In **Muniz**, our Supreme Court held that retroactive application of the registration and reporting requirements of SORNA violated the *ex post facto* clause of the United States and Pennsylvania Constitutions. **See id.** at 1223. Consequently, on September 13, 2017, Lippincott filed an application seeking permission to file a supplemental brief with this Court to address **Muniz**. We granted the application.

On April 20, 2018, this Court certified this case for *en banc* review and directed the parties to brief the following issues:

1) In consideration of [Lippincott]'s having committed the relevant crimes between October 2011 and May 2012, whether the enactment date or the effective date of [SORNA], 42 Pa.C.S. §§ 9799.10-9799.41, controls for purposes of offenses committed between the enactment date and the effective date?

2) Whether there is an *ex post facto* violation to a defendant who is sentenced under SORNA for criminal acts committed after the enactment date of SORNA (December 20, 2011) but before the effective date of SORNA (December 20, 2012)?

3) Whether this Court must address if the Act of Feb. 21, 2018, P.L. 27, No. 10 (HB 631 of 2017; "Act 10"), applies in the instant case and all cases governed by SORNA and, if so, whether Act 10 renders the registration provisions of SORNA non-punitive?

4) If Act 10 applies in the instant matter, whether Act 10's potential effects on [Lippincott], as a result of the crimes having been committed between October 2011 to May 2012, violate the *ex post facto* clause of the United States or Pennsylvania Constitutions?

- 6 -

Order Directing *En Banc* Certification, 4/20/2018.

In his brief to this Court, Lippincott argued that his SVP determination had to be overturned because the SVP designation process under SORNA violated his constitutional right to a jury trial and the *ex post facto* clause of both the United States and Pennsylvania Constitutions. Lippincott also argued that due to the timing of his crimes, there were no sexual offender registration requirements applicable to him. He asserted there was no statute under which he was required to register as a sex offender because: (1) the registration provisions of SORNA were not applicable to him due to *ex post facto* protections under **Muniz**; (2) Megan's Law III was struck down as unconstitutional in **Commonwealth v. Neiman**, 84 A.3d 603 (Pa. 2013); and (3) SORNA specifically provided for the expiration of the former statutory sections of Megan's Law still in effect upon its effective date. Lippincott also argued in his brief that the trial court erred and abused its discretion by failing to appoint a psychological expert upon Lippincott's request where Lippincott was indigent and without funds to retain his own expert.

On April 15, 2019, this Court vacated Lippincott's reporting requirements pursuant to SORNA and remanded the case back to the trial court for further proceedings. In doing so, the *en banc* panel concluded that because Lippincott's crimes predated the effective date of SORNA, the court's application of SORNA's reporting requirements constituted an improper imposition of *ex post facto* penalties. The *en banc* panel discussed that our

General Assembly had amended SORNA in light of *Muniz*, by, *inter alia*, adding Subchapter I, which set forth registration requirements for "offenders convicted of committing offenses on or after Megan's Law I's effective date (April 22, 1996), but prior to SORNA's effective date." *Commonwealth v. Lippincott*, 208 A.3d 143, 152 (Pa. Super. 2019) (*en banc*) (citation omitted).

The *en banc* panel also vacated the SVP determination based on the existing precedent from this Court in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017) (finding SORNA's SVP designation procedure to be unconstitutional), *rev'd*, 226 A.3d 972 (Pa. 2020). The panel declined to address Lippincott's remaining issue: "Accordingly, we vacate the trial court's designation of [Lippincott] as an SVP. In light of this decision, we do not address [Lippincott's] initial argument that the trial court erred in denying his request for the appointment of an expert to assist him at his SVP hearing." *Lippincott*, 208 A.3d at 154.

Upon remand, the trial judge, who, as noted above, had been assigned to the case due to the retirement of the original judge, issued an Order referring Lippincott to the SOAB for the purpose of obtaining an updated SVP evaluation. In the same Order, the trial court denied Lippincott's renewed request for the appointment of an independent expert to conduct a competing SVP assessment.

The SOAB submitted an updated SVP assessment on October 8, 2019. Following a conference during which counsel agreed they were prepared to

conduct an SVP hearing, a second SVP hearing was held on December 6, 2019.

On February 11, 2020, the trial court filed an Order designating Lippincott as

an SVP pursuant to the factors listed in Megan's Law II.[4] Lippincott then filed

the instant appeal to the Superior Court. The trial court filed its Pa.R.A.P.

1925(a) Statement on June 29, 2020, and we now address this appeal.[5]

On appeal, Lippincott raises the following four issues:

A. Did the Trial Court err in deciding to hold a new SVP hearing and reimpose a SVP designation on [Lippincott] in light of the fact that the Superior Court vacated [Lippincott]'s SVP designation without any remand directive for the Trial Court to hold a new SVP hearing?

B. Did the Trial Court err in finding that the Commonwealth met its burden in proving [Lippincott] to be a SVP?

C. Did the Trial Court err in applying Megan's Law II and Subchapter H, 42 Pa.C.S.A. §§ 9791 - 9799.7 (the Megan's Law II version of Subchapter H), to [Lippincott]?

D. Alternatively, did the Trial Court err and abuse its discretion by denying [Lippincott]'s request for the appointment of a court-funded psychological expert to assist [Lippincott] at his SVP hearing or, at the very least, not holding a hearing in 2019 to determine whether [Lippincott] was indigent?

Appellant's Brief, at 5-6.

_____

[4] 42 Pa.C.S.A. § 9795.4 (expired).

[5] In the interim, we filed an unpublished memorandum decision on June 8, 2021. Pursuant to the application of the Commonwealth, that decision was withdrawn and reargument *en banc* was directed by way of an Order of this Court filed on August 16, 2021.

Initially, we hold the trial court properly scheduled a new SVP hearing to decide whether to reimpose the SVP designation. In our *en banc* Opinion of April 15, 2019, we specifically ordered the trial court, upon remand, to determine the appropriate "registration and reporting requirements" for Lippincott:

> Because retroactive application of SORNA's registration and reporting requirements to [Lippincott] violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions, we conclude that [Lippincott] is not required to register as a sex offender under SORNA. Accordingly, we remand this matter to the trial court to determine the appropriate registration and reporting requirements for [Lippincott].

**Lippincott**, 208 A.3d at 152–53. Although this directive was made earlier in the decision, before the *en banc* panel discussed the consequences of the SVP determination by the trial court, it nonetheless specifically directed the trial court to revisit the reporting requirements. As a result, we cannot conclude the trial court exceeded its authority upon remand.

However, we agree with Lippincott that the trial court erred by imposing the reporting requirements using Megan's Law II, as opposed to Subchapter I of Act 29. Accordingly, we grant Lippincott's request for a remand for an SVP hearing pursuant to Subchapter I of Act 29 as the trial court has not had the opportunity to address the application of Subchapter I to Lippincott.

After the trial court imposed Lippincott's current SVP status, the Pennsylvania Supreme Court held that SORNA's registration, notification, and

- 10 -

counseling ("RNC") requirements pursuant to an SVP designation are not unconstitutional:

> RNC requirements do not constitute criminal punishment and therefore the procedure for designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the requirements of **Apprendi** [**v. New Jersey**, 530 U.S. 466 (2000),] and **Alleyne** [**v. United States**, 570 U.S. 99 (2013),] and remains constitutionally permissible.

**Commonwealth v. Butler** ("**Butler II**"), 226 A.3d 972, 976 (Pa. 2020) (footnotes omitted).

Moreover, prior to our Supreme Court's decision in **Butler II**, and in response to **Muniz** and **Butler I**, the General Assembly enacted Act 10, which split SORNA into two different subchapters, Subchapter H and Subchapter I. Shortly thereafter, the General Assembly amended Act 10, and reenacted it as Act 29. The Commonwealth and Lippincott agree that, given the dates on which Lippincott committed the offenses described herein, the applicable registration provision is Subchapter I of Act 29. Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012. **See** 42 Pa.C.S.A. § 9799.52. Our Supreme Court subsequently determined that Subchapter I of Act 29 is nonpunitive and its retroactive application does not violate the constitutional prohibition against ex post facto laws. **See Commonwealth v. Lacombe**, 234 A.3d 602 (Pa. 2020).

As pertinently explained by the Honorable Megan King in **Commonwealth v. Hubert**, 178 EDA 2021, 2022 WL 628630, at *3 (Pa. Super. filed Mar. 4, 2022) (unpublished memorandum):

Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012; or those who were required to register under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired. ***See*** 42 Pa.C.S.A. § 9799.52. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. ***See*** 42 Pa.C.S.A. §§ 9799.10-9799.42.

In ***Commonwealth v. Lacombe***, ___ Pa. ___, 234 A.3d 602 (2020), our Supreme Court held that Subchapter I of [Act 29] is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws. ***See id.*** at ___, 234 A.3d at 626-27. ***See also Commonwealth v. Elliott***, 249 A.3d 1190, 1194 (Pa. Super. 2021) (rejecting *ex post facto* challenge to lifetime registration for rape conviction where appellant was subject to Subchapter I reporting requirements).

***Hubert***, at *3.

Therefore, it is Subchapter I of Act 29 that properly applies to Lippincott. Although the trial court ordered registration through Megan's Law II, and we note that the assessment provisions of Megan's Law II and Subchapter I of Act 29 are practically identical, a remand is necessary to ensure the proper application of SORNA. Accordingly, we remand this case, yet again, for further proceedings in order for the trial court to apply Subchapter I.

Lastly, if Lippincott again applies for an independent psychological expert to assist him at his SVP hearing, the trial court must hold a hearing to determine if Lippincott is currently indigent. ***See Commonwealth v. Cannon***, 954 A.2d 1222, 1225 (Pa. Super. 2008); ***Commonwealth v. Curnutte***, 871 A.2d 839 (Pa. Super. 2005).

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2022